# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

E360INSIGHT, LLC,           )

                  )

          Plaintiff,       )   Case No.  08 C 0340

                  )

      v.              )

                  )   Judge Zagel

COMCAST CORPORATION,    )   Magistrate Judge Mason

                  )

         Defendant.    )

## COMCAST'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Comcast Corporation ("Comcast"), answers the complaint of Plaintiff, e360insight, LLC ("e360"), as follows:

1.     e360insight, LLC (hereafter "e360") is an Illinois limited liability corporation located in Wheeling, Illinois. e360 is an internet marketing company.

**ANSWER:**  Comcast admits that e360 is an Illinois limited liability corporation located in Wheeling, Illinois.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1, and therefore denies these allegations.

2.     Comcast Corporation (hereafter "Comcast") is a Pennsylvania corporation principally located in Philadelphia Pennsylvania.  Comcast is an internet service provider.

**ANSWER:**  Comcast admits that it is a Pennsylvania corporation with a principal place of business in Philadelphia, Pennsylvania.  Comcast admits that, by and through its subsidiaries, is an internet service provider ("Comcast's ISP Services").

3.     Jurisdiction is proper and based on 28 USC § 1332 as the parties are citizens of and principally located in separate states and the amount in controversy exceeds seventy-five

thousand dollars.  Jurisdiction is also proper based on 28 USC § 1331 as this action arises under 18 USC § 1030, The Computer Fraud and Abuse Act.

**ANSWER:**  Comcast admits that the dispute involves citizens of different states. Comcast is without knowledge or information sufficient to form a belief as to e360's allegations as to the amount in controversy with respect to its claims, and therefore denies those allegations. Comcast admits that e360 has made allegations arising under 18 USC § 1030, the Computer Fraud and Abuse Act.

4.     e360 is an email marketing company whose business practices have, at all times relevant to the allegations in this Complaint, complied with, and continue to comply, with all federal and state requirements, laws and standards pertaining to the sending of commercial email, including the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 USC § 7701 ("CAN-SPAM").

**ANSWER:**  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 4, and therefore denies these allegations.

5.     e360 delivers its messages to its customers at addresses provided by said customers.  The customers thus require e360 to use Internet Service Providers ("ISPs"), such as Comcast.  At all times relevant to the claims asserted in this Complaint, e360 has complied, and continues to comply, with all Accepted Use Policies and Terms Of Service agreements stated by Comcast.

**ANSWER**:  Because Comcast believes that e360 is responsible for sending hundreds of thousands of commercial e-mails to Comcast's subscribers, not all of which are readily identifiable as coming from e360, Comcast is without knowledge or information sufficient to

form a belief as to the truth of the allegations of this paragraph 5, and therefore denies these allegations.

6.      e360 has at all times relevant to the claims asserted in this Complaint, complied, and continues to comply, with all Accepted Use Policies and Terms Of Service agreements stated by Comcast.

**ANSWER**: Because Comcast believes that e360 is responsible for sending hundreds of thousands of commercial e-mails to Comcast's subscribers, not all of which are identifiable as coming from e360, Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 6, and therefore denies these allegations.

7.      e360 is hired by and partners with companies that wish to market their products or services using the internet.  This marketing is targeted to persons "opting in" to a list whereby they agree to accept email announcements and/or advertisements.  These persons sign up at websites owned by e360 or at websites owned by e360's marketing partners.  e360 then may attempt to verify the desire to receive emails utilizing a "double opt-in" process, which involves sending a confirmatory email allowing the customer to affirm or terminate its decision to receive marketing emails.  Those customers who affirm their interest in receiving email messages are included in subsequent email messages until they unsubscribe at a later date or until e360 receives bounce information (showing the email account in question is closed) from Comcast.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to truth of the allegations of this paragraph 7, and therefore denies these allegations.

8.      e360 provides the consumer the ability to "opt-out" of receiving emails in every email sent and promptly complies with every request made by a consumer.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 8, and therefore denies these allegations.

9.    e360 does not engage in "spamming," which is essentially the digital equivalent of sending junk mail that is not requested.  e360 only sends email messages to persons who first sign up or opt-in and provide their email address to e360 or to one of e360's marketing partners. e360 employs a variety of permission processes that it controls and that its marketing partners use to obtain permission from and provide notice to the consumer that received the email.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 9, and therefore denies these allegations.

10.    e360 has been approved by ReturnPath, a leading provider of reputation monitoring services to the ISP community, including Microsoft/Hotmail.  In an independent audit of e360's mailing practices, ReturnPath approved e360 for the SenderScore Certification Program, which is Return Path's highest level of certification among legitimate email marketers.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 10, and therefore denies these allegations.

11.    Comcast is an internet service provider ("ISP") that provides email service to its customers and who has agreed to act as an intermediary in delivering and receiving emails on behalf of its customers.

**ANSWER**:  Comcast admits that, by and through its subsidiaries, it provides ISP and e-mail services to its subscribers, but denies e360's characterization of its obligations to subscribers.

12.    Comcast provides to its customers and the public on its website Acceptable Use Policy, Abuse Policy and Agreement for Services, attached and incorporated into this Complaint as Exhibit A.

**ANSWER**:  Comcast admits its subscribers and the public may access the current Comcast Acceptable Use Policy for High-Speed Internet Services, the Comcast Agreement for Residential Services, and a link to Report Abuse at www.comcast.net/terms/, but denies the allegations of this paragraph 12, as the documents available on the website speak for themselves.

13.    At all relevant times, e360 has complied with Comcast's Acceptable Use and Abuse Policies.

**ANSWER**: Because Comcast believes that e360 is responsible for sending hundreds of thousands of commercial e-mails to Comcast's subscribers, not all of which are readily identifiable as coming from e360, Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 13, and therefore denies these allegations.

14.    At all relevant times, and commencing as early as 2005, Comcast regularly blocked emails e360 has repeatedly attempted to send to emails [sic] to Comcast customers (who have signed up to receive such emails,) including some of who have double-confirmed their wish to receive the emails.  Such blocking by Comcast interferes with e360's ability to do business and interferes with e360's business relationship with its customers who use Comcast.

**ANSWER**:  Comcast admits that some of e360's emails directed to subscribers of Comcast's ISP Services have been filtered out by a highly proprietary and confidential filtering technology operated in accordance with industry standards ("Comcast's Filtering System"), but

is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph 14, and therefore denies these allegations.

15.    All instances where Comcast has blocked e360 email addresses are too voluminous to mention in this complaint.  As a recent example, Comcast blocked virtually all of e360's email messages on August 23, 2007.  e360 attempted to send email messages to its customers, including those who have "double-confirmed" their interest in receiving e360's email messages.  e360 used IP address 63.210.103.209 to connect to Comcast's mail servers.  e360 received the following error message from Comcast for all of the messages e360 attempted to send.

> "550 5.2.0 63 .210.103.209 blocked by ldap:ou=rblmx,dc=comcast,dc=net ->
> BL004 Blocked for spam.  Please see
> http://www.comcast.net/help/faq/index.jsp?faq=SecurityMail_Policy18628"

By following the link provided in the Comcast error message, e360 was directed to the following information on Comcast's website:

> "Mail to Comcast is rejected and is returned with an error message containing the code BL004.  What does this mean?
> Our filters have determined that email from your mail server has been sent in patterns which are characteristic of spam.  In an effort to protect subscribers, your mail server has been blocked from sending email to the Comcast network.  Mail servers are typically shared by many users so it may be the case that another party using your mail server has sent spam, even if you have not."

**ANSWER**:  Comcast admits that some e-mails of e360's directed to subscribers of Comcast's ISP Services have been filtered out by Comcast's Filtering System, but because Comcast believes that e360 is responsible for sending hundreds of thousands of commercial e-mails to Comcast's subscribers, not all of which are readily identifiable as coming from e360, it is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph 15, and therefore denies these allegations.

16.     e360 cannot reasonably ascertain how its messages may have been sent "in patterns which are characteristic of spam." Comcast refuses to provide e360 with any information as to how e360 could modify its email messages to avoid triggering the block of its rightfully sent email messages or the delivery of this error message.

**ANSWER**:  Comcast admits that it has refused to provide e360 with highly proprietary, confidential and sensitive information relating to Comcast's Filtering System, but denies the remaining allegations of this paragraph 16.

17.     e360 has on numerous occasions contacted Comcast in attempts to get Comcast to allow e360's email to get through to its customers.  Comcast has refused to allow such emails.

**ANSWER**: Comcast admits that e360 has contacted Comcast, or one of its subsidiaries, regarding its emails, but denies the remaining allegations of this paragraph 17.

18.     At all relevant times, and possibly commencing as early as 2005, Comcast has regularly held or severely and significantly delayed emails e360 has attempted to send to Comcast customers who have signed up to receive such emails, and refused to release such emails, a practice commonly known as "tar-pitting" and is [a] type of "denial of service attack" on e360's mail servers.  Comcast regularly transmits bogus response data in an attempt to lock up e360's connections in order to slow or incapacitate e360's mail servers.  e360's sending mail servers track and report average response time for each recipient domain.  The average response time is defined as the time it takes for the recipient domain to process a message; to receive the message and to acknowledge receipt.  As recently as December 11, 2007, e360 recorded an average response time of 18,433 seconds or 5.1 hours to process a single email message.  During this time, Comcast's mail servers transmit bogus response information to keep the connective active and to erode e360's system capacity.  In doing so, Comcast has interfered with e360's

ability to send email, not just to Comcast customers who are also e360 customers, but to all e360 customers by shutting down e360's servers.

**ANSWER**:  Comcast denies that it, or any of its subsidiaries, have engaged in "tar-pitting" or "denial-of-service attacks."  Because Comcast believes that e360 is responsible for sending hundreds of thousands of commercial e-mails to Comcast's subscribers, not all of which are readily identifiable as coming from e360, Comcast is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph 18, and therefore denies the allegations.

19.    At all times relevant hereto, and commencing as early as 2005, Comcast has regularly blocked emails e360 has attempted to send to Comcast customers who have signed up to receive such emails, some of who have double-confirmed that they wish to receive the emails on the grounds that such emails contain specific words or phrases, such as "free".  Such arbitrary censorship by Comcast violates e360's First Amendment rights and is an unacceptable infringement of e360's commercial speech based on content.

**ANSWER**: Comcast admits that some e-mails e360 has attempted to send to subscribers of Comcast's ISP Services have been filtered out by Comcast's Filtering Technology.  Comcast is without knowledge or information sufficient to form a belief as to whether such subscribers have consented to receiving e-mails from e360, and therefore denies these allegations.  Comcast denies the remaining allegations of paragraph 19.

20.    Comcast uses multiple email filters, including third-party companies and internal blacklists, to filter and block emails.  Comcast uses Spamhaus SBL/XBL/ZEN, a London based self-appointed internet "watch dog" company to monitor and screen emails on its systems. Comcast's use of the Spamhaus blacklists is documented on Comcast's website

(http://www.comcast.net/help/faq/index.jsp?faq=SecurityMail_Policy18627).  Spamhaus

mistakenly listed e360 as a spammer on its ROKSO list, SBL blocklist and Zen blocklist despite

being repeatedly told of its error.  Spamhaus has since removed e360 from its lists per a Court

Order but occasionally violates the Order.  On March 5, 2007, e360 notified Comcast that

Comcast's use of the Spamhaus blacklist was improperly blocking e360's email messages and

was improperly interfering with e360's legitimate business.  e360 provided copies of the

judgment and permanent injunction against Spamhaus from United States District Court case

number 06 C 3958.  Notification was sent to Comcast legal counsel via FedEx tracking number

798120681231.  e360 did not receive a response from Comcast.  Attached and incorporated into

this Complaint as Exhibit B is a copy of the March 5, 2007 letter.

     **ANSWER:**  Comcast admits that Comcast's ISP Services use email filters to filter emails

and admits that such services have used lists obtained from Spamhaus for such purposes.

Comcast admits that on March 5, 2007, e360 notified Comcast, or one if its subsidiaries, that it

believed Spamhaus had mistakenly listed e360 as a spammer on its block lists and sent a copy of

a default judgment against Spamhaus (which has since been vacated) from United States District

Court case number 06 C 3958.  Comcast is without knowledge or information sufficient to form

a belief as to the remaining allegations of this paragraph 20, and therefore denies these

allegations.

     21.  Comcast has blocked and continues to block emails sent by e360 to its customers

based on the Spamhaus listing above even after being told of the error.  As of the date of this

filing, the most recent incidence of improper blocking by Comcast via the Spamhaus blacklist

was December 9, 2007.

**ANSWER**: Comcast admits that some emails sent by e360 to subscribers of Comcast's ISP Services have been filtered out by Comcast's Filtering System.  Because Comcast believes that e360 is responsible for sending hundreds of thousands of commercial e-mails to Comcast's subscribers, not all of which are readily identifiable as coming from e360, Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph 21, and therefore denies these allegations.

22.     Comcast has blocked and continues to block emails sent by e360 to its customers based on third-party and internal blacklists and other software filters supplied by third-parties. Some of the known blocking technologies used by Comcast include MAPS by TrendMicro and Brightmail by Symantec.

**ANSWER**: Comcast admits that some emails sent by e360 to subscribers of Comcast's ISP Services have been filtered out by Comcast's Filtering Technology.  Comcast admits that Comcast's ISP Services have used filtering technologies including MAPS by TrendMicro and Brightmail by Symantec.

23.     Comcast has engaged in 'denial-of-service' attacks on e360's network and computer system by consuming, destroying, altering or withholding emails sent by e360 to its customers.  Such attacks overwhelm and disable e360's network and prevent them from sending or receiving emails from e360's consumers in an attempt to halt e360's business.

**ANSWER**: Comcast denies that Comcast's ISP Services have engaged in 'denial-of-service' attacks as set forth in paragraph 23.  Comcast is without knowledge or information sufficient to form a belief as to truth of the remaining allegations of paragraph 23, and therefore denies these allegations.

24.     Comcast has transmitted fraudulent bounce information to e360's mail servers specific to email addresses contained on e360's opt-in marketing list.  The responses sent by Comcast mail servers to e360 are fraudulent because they contain information indicating that the email address is invalid and not active.  As an email marketer, e360 relies on bounce information from Comcast's mail servers to determine whether e360's customer email addresses are still active and deliverable.  e360 has information and reason to believe Comcast is intentionally transmitting fraudulent bounce information to e360 in an attempt to discourage e360 from sending additional email messages.  By transmitting fraudulent bounce information, Comcast is effectively destroying e360's proprietary assets and the value contained in e360's opt-in database of email addresses.  Such statements are made on information and belief as only Comcast has access to and knowledge of the accounts it has and will not allow e360's emails to be delivered regardless of account activity.

**ANSWER**:  Comcast denies the allegations of paragraph 24.

## COUNT I
### (Tortious Interference with Prospective Economic Advantage)

25.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 to 24 as if fully stated herein.

**ANSWER**: Comcast realleges its answers to the allegations in paragraphs 1 to 24 as though fully set forth herein.

26.     Under Illinois law, "the tort of interference with prospective economic advantage has four elements:  (1) plaintiff must have a reasonable expectancy of a valid business relationship with a third party; (2) defendant must know of the prospective business relationship;

(3) defendant must intentionally interfere with the prospective business relationship such that the prospective business relationship never materializes; and (4) the interference must damage the plaintiff. *Lynch Ford, Inc. v. Ford Motor Co.,* 957 F. Supp. 142, 145-146 (N.D.Ill 1997).

**ANSWER**: Comcast admits that paragraph 26 contains an accurate quote from *Lynch Ford, Inc. v. Ford Motor Co.,* 957 F.Supp. 142, 145-146 (N.D.Ill. 1997).

27.    e360 only sends emails to consumers who: a) purchase goods and services from its proprietary company owned website; or b) sign-up to receive emails either through e360 or through one of its marketing partners. As such, e360 only sends emails to individuals who have done business with e360 or who have expressed an interest in doing business with e360 or its marketing partners. Thus, e360 has a reasonable expectation of valid business relationship with the consumers it emails.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 27, and therefore denies these allegations.

28.    Comcast, an internet service provider, has agreed to act and is compensated for acting as an intermediary in delivering the email sent by and to its customers. Comcast has no right to interfere in the business relationship between e360 and its clients or potential clients.

**ANSWER**: Comcast admits that, by and through its subsidiaries, it provides ISP services which involve, *inter alia*, providing subscribers with e-mail addresses and access to e-mail, but denies the remaining allegations of this paragraph 28.

29.    Comcast has knowledge of the [sic] e360's prospective business relationships with Comcast users. Indeed, Comcast has been notified numerous times by e360 of e360's attempts to contact e360's customers and potential customers.

**ANSWER**:  Comcast admits that e360 has contacted Comcast, or one of its subsidiaries, regarding its attempt to email Comcast's subscribers.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph 29, and therefore denies these allegations.

30.    Comcast has intentionally interfered with e360's prospective business relationships by blocking the emails e360 has sent or tried to send to its customers.  Despite being notified on numerous occasions by e360 of such interference, Comcast has refused to stop interfering in e360's prospective business relationships.

**ANSWER**: Comcast admits that some emails sent by e360 to subscribers of Comcast's ISP Services have been filtered out by Comcast's Filtering Technology and that e360 has contacted Comcast, or one of its subsidiaries, regarding its attempt to email subscribers, but denies the remaining allegations of this paragraph 30.

31.    Comcast's 'denial of service' attacks interfere with e360's ability to send emails to any of its clients or potential clients thereby interfering with e360's business relationship with its clients.  Such attacks cause significant damage to e360 by preventing it from communicating with its clients or potential clients.

**ANSWER**: Comcast denies that it, or any of its subsidiaries, have engaged in 'denial of service' attacks as set forth in this paragraph 31.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph 31, and therefore denies these allegations.

32.    Comcast blocking e360's emails to its clients and potential clients interferes with e360's prospective business relationships with its clients and potential clients such that those relationships never materialize.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 32, and therefore denies these allegations.

33.    Comcast's refusal to allow e360 to communicate with any [sic] its clients and potential clients interferes with e360's business relationship with its clients and potential clients.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to truth of the allegations of this paragraph 33, and therefore denies these allegations.

34.    Comcast's interference with e360's business relationships causes e360 significant damage.  e360 estimates the damage to exceed $4.5 million per year from 2005 through 2007.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to truth of the allegations of this paragraph 34, and therefore denies these allegations.

35.    The acts complained of were and continue to be done willfully or with such gross negligence as indicate Comcast's reckless disregard of e360's rights.  e360 is therefore entitled to punitive damages from Comcast.

**ANSWER**:  Comcast denies the allegations of paragraph 35.

## COUNT II
### (Violation of Computer Fraud and Abuse Act)

36.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 to 24 as if fully stated herein.

**ANSWER**: Comcast realleges its answers to the allegations in paragraphs 1 to 24 as though fully set forth herein.

37.    The Computer Fraud and Abuse Act (hereafter "Act") prohibits anyone from: (i)"knowingly caus[ing] the transmission of a program, information, code, or command, as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected

computer….or…(iii)intentionally access[ing] a protected computer without authorization, and as a result of such conduct, causes damage.  18 U.S.C. § 1030(a)(5)(A)(i) and (iii).

**ANSWER**:  Comcast admits that this paragraph 37 quotes prohibitions contained in the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i) and (iii).

38.    The Act also requires that the "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value."  18 U.S.C. § 1030(a)(5)(B)(i).

**ANSWER**:  Comcast admits that this paragraph 38 is an excerpted quote from the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B)(i).

39.    Under the Act, any person who suffers damage or loss by reason of a violation of the Act may obtain compensatory damages, economic damages and injunctive relief.  18 U.S.C. § 1030(g).

**ANSWER**:  Comcast admits that 18 U.S.C. § 1030(g) provides that one who suffers damage or loss from a violation of the Consumer Fraud and Abuse Act may recover certain damages, including compensatory, economic, or injunctive relief, but denies the allegations of this paragraph 39 as the statute speaks for itself.

40.    Comcast intentionally and knowingly engaged in denial of service attacks upon e360's system by slowing process times of its emails by hours.  Such delay slowed and all but stopped e360's systems from being able to function.  This intentional damage to e360 prevented e360 from being able to do business and cost e360 in terms of lost business along with excessive wear and tear on e360's systems and incremental infrastructure costs to overcome the system load created by Comcast's denial of service attacks.

**ANSWER**: Comcast denies the allegations of paragraph 40.

41.     e360 relies on Comcast to provide accurate and truthful information regarding the deliverability of mail and the activity status of email addresses of Comcast customers on e360's emailing list.  In fact, e360 has no other resource available to it to obtain this accurate information and thus requires Comcast's cooperation in providing reliable, accurate information.

**ANSWER**: Comcast is without information or knowledge sufficient to form a belief as to truth of the allegations of paragraph 41, and therefore denies these allegations.

42.     Comcast frequently transmits false bounce information to e360's mail servers. When Comcast transmits false information on the status of an email account, e360's removes the address from its mailing and updates its database to reflect that the email is no longer valid.

**ANSWER**:  Comcast denies that Comcast's ISP Services transmit false bounce information to e360's mail servers.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 42, and therefore denies these allegations.

43.     When Comcast provides false information regarding an email account to e360 and causes e360 to remove an active email address from its database, Comcast's actions have directly resulted in the destruction of e360's proprietary data and asset, its database.

**ANSWER**: Comcast denies that Comcast's ISP Services provide false information to e360.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43, and therefore denies these allegations.

44.     e360 estimates that such denial of service attacks upon its systems have cost it five hundred ninety-one thousand two hundred ($591,200.00) dollars.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44, and therefore denies these allegations.

45.     e360 estimates that Comcast false bounce information and destruction of its email database has caused it $2,498,924.00 dollars.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45, and therefore denies these allegations.

46.     The acts complained of were and continue to be done willfully or with such gross negligence as indicate Comcast's reckless disregard of e360's rights.  e360 is therefore entitled to punitive damages from Comcast.

**ANSWER**: Comcast denies the allegations of paragraph 46.

## COUNT III
### (Violation of First Amendment Rights)

47.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 to 24 as if fully stated herein.

**ANSWER**: Comcast realleges its answers to the allegations in paragraphs 1 to 24 as though fully set forth herein.

48.     Commercial speech is entitled to First Amendment protection as long as it concerns lawful activity and it not misleading.  *Virginia Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S.  748 (1976).  "Indeed, we recognized that a "particular consumer's interest in the free flow of commercial information…may be as keen, if not keener by far, than his interest in the day's most urgent political debate." *Id.* at 763.

**ANSWER**: Comcast admits that the court in *Virginia Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S.  748 (1976) held that commercial speech is entitled to some First Amendment protection and that the court made the statements quoted in this paragraph 48.

49.    It is also recognized that commercial communication "that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment." *Edenfield v. Fane,* 507 U.S. 761, 767 (1993).

**ANSWER**:  Comcast admits that this paragraph 49 contains an accurate quote from *Edenfield v. Fane,* 507 U.S. 761, 767 (1993).

50.    e360 has the right to send commercial emails to its consumers and consumers who have asked or agreed to receive its emails.  e360's emails concern only lawful activity and are not misleading.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50, and therefore denies these allegations.

51.    Comcast's arbitrary and capricious use of its network to systematically deny e360 the ability to send commercial emails to its customers and consumers who have asked to or agreed to receive such emails is a violation of e360's First Amendment rights.

**ANSWER**: Comcast denies the allegations of paragraph 51.

52.    Comcast's actions have caused significant damage to e360's ability to communicate and do business with its customers.  Specifically, since e360 is an email marketer, e360 has no other way to communicate to its customers who subscribe to or have their email through Comcast.  This loss of communication in the marketplace harms not only e360 but also all of its customers.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52, and therefore denies these allegations.

53.     The acts complained of were and continue to be done willfully or with such gross negligence as indicate Comcast's reckless disregard of e360's rights.  e360 is therefore entitled to punitive damages from Comcast.

**ANSWER**:  Comcast denies the allegations of paragraph 53.

**COUNT IV**
**(Unfair Competition and Business Practices)**

54.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth in paragraphs 1 to 24 as if fully stated herein.

**ANSWER**: Comcast realleges its answers to the allegations in paragraphs 1 to 24 as though fully set forth herein.

55.     In Illinois, it is unlawful for any business to use unfair methods of competition and business practices, including but not limited to the use or employment of any false pretense, false promise or misrepresentation, in the conduct of trade or business.  815 ILCS 505/2.

**ANSWER**:  Comcast denies e360's characterization of the provisions of the Illinois Consumer Fraud Act, 815 ILCS 505/2, in that the statute speaks for itself.

56.     Comcast provides to its customers and the public on its website Acceptable Use Policy, Abuse Policy and Agreement for Services.  Implicit in these policies is the understanding that if one complies with the Comcast's policies, the mail sent will be delivered.

**ANSWER**:  Comcast admits that the Comcast Acceptable Use Policy for High-Speed Internet Services, the Comcast Agreement for Residential Services, and a link to Report Abuse are provided on its website at www.comcast.net/terms/ for subscribers of Comcast's ISP Services.  Comcast is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph 56, and therefore denies these allegations.

57.    Although e360 has complied with Comcast's polices at all times, Comcast has refused to comply with their own policies and deliver the mail sent by e360.

**ANSWER**: Comcast denies the allegations of paragraph 57.

58.    At the same time that Comcast is blocking e360's email messages that are compliant with Comcast's polices, Comcast is allowing other email marketers with substantially similar business practices as those employed by e360 to send email messages to Comcast's customers.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58, and therefore denies these allegations.

59.    Comcast's refusal to deliver email sent by e360 while allowing its competitors to freely transmit email puts e360 at a disadvantage and creates an un-level playing field on which e360 must compete.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as the truth of the allegations set forth in this paragraph 59, and therefore denies these allegations.

60.    Upon information and belief, Comcast has made agreements, either written or verbal, to allow certain email marketers to send or transmit email without interruption regardless of whether such email meets Comcast's Acceptable Use policy.  Based on these agreements, Comcast has applied its policies with certain email marketers in a way that is materially different than Comcast's application of its policies to e360's email messages.  Such statement is made upon information and belief because only Comcast can verify with whom they have agreements with to allow mail to be sent to their customers.

**ANSWER**: Comcast denies the allegations of this paragraph 60.

61.     Comcast's refusal to create a fair playing field for legitimate email marketers to compete has caused serious damage to e360's business and damaged its reputation.

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 61, and therefore denies these allegations.

62.     The acts complained of were and continue to be done willfully or with such gross negligence as indicate Comcast's reckless disregard of e360's rights.  e360 is therefore entitled to punitive damages from Comcast.

**ANSWER**: Comcast denies the allegations of paragraph 62.


## AFFIRMATIVE DEFENSES

63.     As a complete and affirmative defense to Counts I, II, and IV, Comcast alleges that it is immune from liability in accordance with 47 U.S.C. § 230, the Communications Decency Act.

64.     As a complete and affirmative defense to Counts I, II, and IV, Comcast alleges that it is immune from liability in accordance with the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et. seq.* (the "CAN-SPAM Act").

65.     As a complete and affirmative defense to Counts I, II, and IV, Comcast alleges that it is immune from liability in accordance with the anti-spam laws of the various states, including the Illinois Electronic Mail Act, 815 ILCS 511/10(g) and the Pennsylvania Unsolicited Telecommunications Advertisement Act, 73 PS § 2250 *et. seq.*

66.     As a complete and affirmative defense to Counts I to IV, Comcast alleges that e360 comes to court with unclean hands based on the fact that it has, among other things, violated the CAN-SPAM Act, violated the Computer Fraud and Abuse Act, 18 U.S.C. §

1030(a)(5)(A)(i) and (iii), violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 805 ILCS 505/2, violated anti-spam laws of the various states, including the Illinois Electronic Mail Act, 815 ILCS 511/10 and the Pennsylvania Telecommunications Advertisement Act, 73 PS § 2250 *et. seq.,* sent Comcast subscribers fraudulent and misleading e-mails, including e-mails advertising counterfeit or unauthorized goods, and made fraudulent statements about its services to Comcast and in its pleadings in this case.

67.     As a complete and affirmative defense to Counts I to IV, Comcast alleges that e360 has unreasonably delayed in bringing these claims to the detriment of Comcast, and therefore these claims are barred by the doctrine of laches.

68.     As a complete and affirmative defense to Counts I to IV, Comcast alleges that e360 has failed to mitigate its damages, if any.

69.     As a complete and affirmative defense to Counts II to IV, Comcast alleges that e360's claims are barred by the applicable statutes of limitations.

## **PRAYER FOR RELIEF ON COMPLAINT**

WHEREFORE, Comcast prays for judgment with respect to e360's complaint as follows:

70.     Judgment be entered in favor of Comcast on each and every cause of action.

71.     Comcast be awarded its attorneys' fees and costs.

72.     The Court declare that e360 has unclean hands because (i) it violated the CAN-SPAM Act, the Computer Fraud and Abuse Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the anti-spam laws of the various states including Illinois and Pennsylvania; (ii) it has sent Comcast ISP Services subscribers fraudulent and misleading e-

mails, and (iii) it has made fraudulent statements about its services to Comcast and in its pleadings in this case.

73.    Comcast be awarded such other and further relief as may be just or equitable.


Date: March 4, 2008                    Respectfully submitted,

                                       LOEB & LOEB LLP

                                       By:   /s/ Douglas N. Masters
                                             Douglas N. Masters
                                             Nathan J. Hole
                                             321 North Clark St., Ste. 2300
                                             Chicago, IL 60606
                                             Telephone: (312) 464-3100
                                             Fax: (312) 464-3111
                                             dmasters@loeb.com

                                             *Attorneys for Defendant,*
                                             *Comcast Corporation*

### CERTIFICATE OF SERVICE

I, Douglas N. Masters, hereby certify that a copy of **COMCAST'S ANSWER AND**

**AFFIRMATIVE DEFENES** has been served upon:

Joseph L. Kish
Synergy Law Group, LLC
730 West Randolph, 6th Floor
Chicago, Illinois 60661

Carla E. Buterman
Law Office of Carla E. Buterman
555 Skokie Blvd., Ste 500
Northbrook, IL 60062

Via ECF Notification on this 4th day of March, 2008.

_____/s/ Douglas N. Masters_____